**Johnnie MOTLEY, Jr., Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

### Civ. A. No. 83–0071–D.

United States District Court, W.D. Virginia, Danville Division.

March 2, 1985.

J. Patterson Rogers, Danville, Va., for plaintiff.

E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., for defendant.

### MEMORANDUM OPINION

KISER, District Judge.

It is trite but true that the contingent fee is the poor man's key to the courthouse door. This is recognized both statutorily and judicially. 42 U.S.C. § 406(b)(1); *Morris v. Social Security Administration,* 689 F.2d 495 (4th Cir.1982). This case presents a challenge to certain procedures of the Secretary of Health and Human Services (the "Secretary") which adversely affect the use of the contingent fee in appeals of social security benefit determinations.

### I.

Johnnie Motley, Jr., suffers from severe lower back pain caused by a ruptured disc. This injury, coupled with his illiteracy, age and prior work experience, led an Administrative Law Judge to find him "disabled" on April 13, 1982. The Appeals Council elected to review this determination. Disregarding Motley's testimony of pain, the Appeals Council reversed the decision of

the ALJ. Motley appealed to this Court. The merits of Motley's claim for benefits was set out in a Report and Recommendation of Magistrate B. Waugh Crigler filed January 19, 1984. On February 9, 1984, judgment was entered for Motley, and this case was remanded to the Secretary for a calculation of benefits. On remand, the Secretary determined that Motley was entitled to $10,230 in past due disability benefits under Title II of the Social Security Act, and to $5,318 in Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.

Motley was successfully represented before this Court by J. Patterson Rogers, 3rd, Esquire. Rogers petitioned this Court for approval of attorney's fees pursuant to § 206(b) of the Social Security Act, 42 U.S.C. § 406(b).[1] On September 26, 1984, the Court referred this petition to United States Magistrate Crigler for proposed findings and recommendations. Magistrate Crigler filed his report on January 28, 1985. He recommends that attorney's fees in the amount of $2,556.13 be awarded. The Secretary objects to the payment of any fee beyond the $1,476.40 currently being withheld. The difference between these figures results from the Secretary's practice of withholding attorney's fees based upon the net amount which will actually be paid to the claimant, rather than the gross amount of the Title II award.

## II.

Magistrate Crigler has made an initial determination that an attorney's fee award of twenty-five percent of Motley's benefits is reasonable in this case. Section 406(b)(1) of the Social Security Act authorizes the Court to certify a fee award "not in excess of 25 percent of the total past due benefits to which the claimant is entitled by reason of such judgment" granted by the Court. While it is true that this amount is a maximum, and not appropriate for all cases, *Blankenship v. Schweiker*, 676 F.2d 116 (4th Cir.1982), I agree with the Magistrate that a 25 percent award is reasonable in this case. The most influential factor in this determination is that Motley and Rogers entered into a contingent fee arrangement for legal services which provided that Rogers would receive 25 percent of Motley's past due benefits together with recoverable costs.

The Secretary does not object to this aspect of the Magistrate's Report. In fact, she has withheld and certified what she considers to be 25 percent of Motley's benefits. When the concurrent award was made, the Secretary first calculated Motley's past due SSI benefits. This sum, $5,318.90, was sent directly to Motley. Then the Secretary calculated Motley's past due Title II award. The $10,230.90 disability benefit award was offset by the SSI award and $6.40 in undisputed deductions. Of the remaining $5,905.60, 25 percent ($1,476.40) was withheld as attorney's fees. The remainder was paid to Motley.

The procedure used by the Secretary to offset Title II awards with SSI benefits previously or concurrently received is the result of legislation designed to prevent windfalls to claimants, Section 1127 of the Social Security Act. 42 U.S.C. § 1320a–6.[2]

---

1. 42 U.S.C. § 406(b)(1) provides:

    (b)(1) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

2. 42 U.S.C. § 1320a–6 has been recently amended. The amendment, found in H.R.Rep. No. 861, 98th Cong., 2d Sess. 669–670, P.L. 98–369, 98 Stat. 494 (1984), provides as follows:

    Sec. 2615. (a) Section 1127 of the Social Security Act is amended to read as follows:

    "ADJUSTMENTS IN SSI BENEFITS ON ACCOUNT OF RETROACTIVE BENEFITS UNDER TITLE II

Pursuant to these provisions, the Secretary adopted appropriate regulations, which are set out at 20 C.F.R. § 404.4086 and § 416.-1123. While these regulations do not explicitly amend the attorney's fee provisions of 42 U.S.C. § 406, the interaction of these provisions was addressed when the final regulations were promulgated.

As for attorneys' fees, the amount of retroactive benefits that is subject to withholding for payment of an attorney's fees is the total amount of retroactive Social Security benefits *payable* to the beneficiary (see § 404.1703). The amount payable is the amount of retroactive benefits less the amount of any deductions, reductions, or overpayments applicable to the retroactive period. Thus, the amount of retroactive benefits

*payable* for purposes of withholding an attorney's fee is the amount of retroactive Social Security benefits reduced by the amount of any SSI payments received in the retroactive period.

47 Fed.Reg. 4986 (1982) (emphasis in original).

In response to comments that this procedure would provide less incentive for attorneys to represent disability applicants, the Secretary claimed that the amount of the authorized fee is not based upon the amount of retroactive benefits payable to the claimant, but upon independent criteria. She further asserted that the amount of retroactive benefits is relevant only to the amount of the fee that the Secretary may withhold and pay directly to the attorney. 47 Fed.Reg. 4987 (1982).[3]

"SEC. 1127. (a) Notwithstanding any other provisions of this Act, in any case where an individual—

"(1) is entitled to benefits under title II that were not paid in the months in which they were regularly due and

"(2) is an individual or eligible spouse eligible for supplemental security income benefits for one or more months in which the benefits referred to in clause (1) were regularly due, then any benefits under title II that were regularly due in such month or months, or supplemental security income benefits for such month or months, which are due but have not been paid to such individual or eligible spouse shall be reduced by an amount equal to so much of the supplemental security income benefits, whether or not paid retroactively, as would not have been paid or would not be paid with respect to such individual or spouse if he had received such benefits under title II in the month or months in which they were regularly due.

"(b) For purposes of this section, the term 'supplemental security income benefits' means benefits paid or payable by the Secretary under title XVI, including State supplementary payments under an agreement pursuant to section 16161(a) or an administration agreement under section 212(b) of Public Law 93–66.

"(c) From the amount of the reduction made under subsection (a), the Secretary shall reimburse the State on behalf of which supplementary payments were made for the amount (if any) by which such State's expenditures on account of such supplementary payments for the month or months involved exceeded the expenditures which the State would have made (for such month or months) if the individual had received the benefits under title II

at the times they were regularly due. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence shall be covered into the general fund of the Treasury."

(b) the amendment made by this section shall apply for purposes of reducing retroactive benefits under title II of the Social Security Act or retroactive supplemental security income benefits payable beginning with the seventh month following the month in which this Act is enacted; except that in the case of retroactive title II benefits other than those which result from a determination of entitlement following an application for benefits under title II or from a reinstatement of benefits under title II following a period of suspension of termination of such benefits, it shall apply when the Secretary of Health and Human Services determines that it is administratively feasible.

3. 47 Fed.Reg. 4987 (1982) includes the following discussion concerning the effect of the proposed offset regulations on attorney's fees:

*Issue:* Disincentive to Represent SSA Applicants.

Several commenters suggested that if attorney fees are based upon the amount of retroactive Social Security benefits after reduction for receipt of SSI payments, the proposed rule will provide less incentive for attorneys to represent disability applicants.

*Response:* Under authority of regulations issued pursuant to section 206(a) of the Act, SSA is directed to set a reasonable fee to compensate an attorney for services rendered in connection with a determination by us favorable to a claimant on a claim for Social Security benefits. The amount of the fee is

Magistrate Crigler has recommended that attorney's fees in this case be based upon the gross amount of past due Title II benefits, rather than the net benefits after the SSI offset. The Secretary objects to this recommendation.

The only two reported decisions on this question both hold that the Secretary's offset procedure artificially reduces the amount of benefits available to make an award of attorney's fees, and thus deters representation of social security claimants. *Burnett v. Secretary of Health and Human Services,* 563 F.Supp. 789, 793 (W.D. Ark.1983); *Carlisi v. Secretary of Health and Human Services,* 583 F.Supp. 135, 138 (E.D.Mich.1984).

Thus, in cases where the Court eventually awards a fee to claimant's counsel, a procedure which artificially reduces the amount of benefits available from which to make such an award represents a strong disincentive for lawyers to represent Social Security claimants. This cannot have been Congress's intent in enacting Section 1127. That section was intended to recover windfalls from those who had overcollected benefits under Title XVI, not to penalize attorneys.

*Burnett,* 563 F.Supp. 793.

The Secretary argues that these decisions are incorrect and premised upon an unwarranted distinction between concurrent SSI and Title II awards, and Title II awards where SSI benefits were previously paid. Such a distinction, the Secretary claims, is improper. She cites the recent decision in *Gallo v. Heckler,* 600 F.Supp. 1513 (D.C.E.D.N.Y.1985).

The *Gallo* court concluded that the offset provisions of 42 U.S.C. § 1320a–6 were properly applied in cases of concurrent adjudications. The court was particularly persuaded by the recent amendments to § 1320a–6. But the *Gallo* court was not presented with the issue of attorney's fees. (At 1518, ftnt. 8). The decision was expressly limited to the calculation of the actual amount of money to be paid to the claimant. (At 1519). And the *Burnett* and *Carlisi* cases were both distinguished because they involved attorney's fees and the problem of discouraging representation of claimants. (At 1518). Therefore, while I do not dispute the analysis used by the *Gallo* court, I do not believe that decision is particularly helpful in resolving the issue at hand.

## III.

In enacting 42 U.S.C. § 406, Congress sought to encourage the effective legal representation of claimants by ensuring lawyers that they would receive reasonable fees through certification by the Secretary. *Dawson v. Finch,* 425 F.2d 1192, 1195 (5th Cir.1970), *cert. denied,* 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 *rehearing denied,* 400 U.S. 953, 91 S.Ct. 233, 27 L.Ed.2d 261. In this case, like many others, the claimant's disability benefits are his only source of income. Rogers contends that in the absence of withholding and certification, there is no practical method for him to collect his fee. In addition, it is clear that Motley and his attorney contemplated that the fee would be based upon the amount of any Title II judgment granted by the Court. There are no provisions under Title XVI equivalent to § 406, so an attorney cannot receive his fee out of past due SSI benefits. In the case of concurrent adjudications, the only funds available for withholding are Title II benefits.

not based upon the amount of retroactive benefits payable to the claimant: it is determined independently, based upon criteria for evaluating the attorney's services set out in § 404.1725(b). The amount of the fee authorized under those criteria may be equal to or larger or smaller than the amount of retroactive benefits withheld for direct payment of an attorney's fee. A fee may be authorized even if no retroactive benefits are payable.

The amount of retroactive benefits payable to the claimant is pertinent only in determining how much of the authorized fee may be paid directly by SSA to the attorney. In the event that 25 percent of the retroactive benefits payable is less than the amount of the authorized fee, we will pay the amount of 25 percent directly to the attorney and the attorney is authorized to collect the remainder of the fee directly from the claimant.

The congressional intent behind 42 U.S.C. § 1320a–6 was to prevent the windfall to claimants that could occur under the prior law. An individual's entitlement under SSI and Title II is to be considered as a totality, so that the claimant doesn't receive a benefit because of the timing of Title II checks. S.Rep. No. 408, 96th Cong., 2d Sess. 78 (1980); H.R. Conference Rep. No. 944, 96th Cong., 2d Sess. 69 (1980), U.S.Code Cong. & Admin.News 1980, 1277. But at no point is there any evidence that this windfall provision was intended to affect attorney's fees under 42 U.S.C. § 406. And such an effect is not a necessary consequence of the two acts. In fact, the Secretary's regulations implementing § 1320a–6 appear to conflict with her earlier regulations involving the calculation of SSI benefits.

SSI benefits are available to aged, blind or disabled individuals whose income does not exceed specified levels. 42 U.S.C. § 1382(a). "Income" is defined as both earned income and unearned income, and includes:

> (B) any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits...

42 U.S.C. § 1382a(a)(2)(B).

The implementing regulations define how unearned income is counted. 20 C.F.R. § 416.1123(b)(3) provides:

> (b) Amount considered as income. We may include more or less of your unearned income than you actually receive.

> .    .    .    .    .

> (3) *We include less than you actually receive if part of the payment is for an expense you had in getting the payment.* For example, if you are paid for damages you receive in an accident, we subtract from the amount of the payment your medical, *legal,* or other expenses connected with the accident. *If you receive a retroactive check from a benefit program other than SSI, legal fees connected with the claim are subtracted.* (emphasis added).

Thus, in calculating the amount of income "received" during a particular quarter for the purposes of establishing SSI benefits, the Secretary's own regulations state that she will consider only the net amount of any payment after all *legal* expenses including attorney's fees have been deducted. In one reported case, SSR–80–21 (July, 1980), a maintenance allowance obtained from an employer under maritime law for an injury was classified, like other disability benefits, as unearned income for SSI purposes. The portion paid in attorney's fees was excluded, however, as an ordinary and necessary legal expense in the recovery of unearned income. Annot., 61 A.L.R.Fed. 230, 246 (1983). This approach is a logical one which recognizes that it is the net amount of a benefit, not the gross amount, that is actually available to meet living expenses. *See Kimmes v. Califano,* 647 F.2d 1028 (10th Cir.1981), *cert. denied,* 454 U.S. 898, 102 S.Ct. 400, 70 L.Ed.2d 214 (1981), and the cases cited therein.

The windfall provisions of § 1320a–6, and the regulations implementing that section at 20 C.F.R. 404.408b and 20 C.F.R. 416.1123(d), all relate to the *timing* of past due benefit payments, but they do not alter the *calculation* of SSI benefits. The recent amendments to the Social Security Act provide that retroactive Title II benefits will be treated as if they had been paid in the months they were due. SSI benefits are then calculated based upon the recipient's "income", including Title II benefits. The actual Title II benefits are then to be reduced (offset) by the amount of overpaid SSI benefits, if any. In making these calculations, there is no reason why the attorney's fees awardable under 42 U.S.C. § 406 should be treated any differently than other legal expenses incurred in obtaining benefit payments.

This conclusion is supported by the language of Section 406 itself, which states that the award should not exceed 25 per-

cent of "the *total* of the past due benefits to which the claimant is *entitled by reason of such judgment.*" 42 U.S.C. § 406(b)(1) (emphasis added). The benefits referred to are, of course, the Title II benefits awarded; any Title XVI benefits are not included. The amount to which the claimant is *entitled* is the total amount which should have been paid during earlier periods. This amount is not, of course, what the claimant will actually *receive.* Other provisions provide for deductions for prior over-payments, or the windfall provisions may apply. Even the attorney's fee provisions themselves reduce (by up to 25 percent) the amount which the claimant will be *paid.* All of these deductions, however, are made from the *total* of the past due benefits to which the judgment entitles the claimant.

■ Contrary to the position taken by the Secretary in this case, the definition of "past-due benefits" set out in 20 C.F.R. § 404.1703 is not clearly inconsistent with this interpretation. That section states that:

"Past-due benefits" means the total amount of benefits payable under Title II of the Act to all beneficiaries that has accumulated because of a favorable administrative or judicial determination...

Certainly the entire amount of any Title II award is payable to the claimant. But as with all judgments, it is payable subject to certain deductions and liens, including attorney's fees, over-payments, and offsets against SSI benefits previously paid. Nonetheless, it is the *total* amount of past due benefits from which the attorney's fee award is calculated and withheld, not the net amount after deductions. The language of the Act expresses the intent of Congress to accord a priority status to attorney's fees. Other deductions or offsets can be made before the claimant is

paid, but only after attorney's fees have first been calculated.

It is true that the Secretary is empowered to promulgate regulations, and her interpretations of the statute involved are entitled to great weight. *Schweiker v. Hogan,* 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982). In this case, however, the Secretary's procedures for implementing 42 U.S.C. § 1320a–6 are in conflict with the clear language and intent of 42 U.S.C. § 406(b) and with her own method of calculation at 20 C.F.R. § 416.1123(b)(3). The standard to be applied in such a case is whether the interpretive regulation constitutes a permissible gloss on the statute by the Secretary, in light of the statute's language, structure, and legislative history. *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). Assuming, without deciding, that the regulations in § 404.4086 and § 416.-1123(d) are appropriate methods for implementing the windfall offset provisions of § 1320a–6, I find that these regulations are an inappropriate gloss on § 406(b) to the extent that they require application of the SSI offset to Title II benefits before the calculation and withholding of attorney's fees.[4] The statute requires that those fees be calculated and withheld based upon the total amount of past due benefits, not the net amount after offset.[5]

Accordingly, Rogers is entitled to a fee award in the case of $2,556.13.

## IV.

Having reached this conclusion, there remains the question of assuring payment to Rogers. Through her own miscalculation, the Secretary has only withheld $1,476.40 with which to pay attorney's fees. The Secretary has improperly disbursed to Motley $1,079.73 which should have been withheld for the benefit of his attorney.

---

4. Contrary to the argument of the Secretary, this analysis is applicable to both current and non-current adjudications. Where SSI benefits have been actually paid out prior to a Title II award, the windfall offset provisions can be applied, but only after attorney's fees have been withheld.

5. This decision is limited, of necessity, to awards of attorney's fees under 42 U.S.C. § 406(b)(1). It should be noted that similar statutory language is used in § 406(a). Moreover, the amount of attorney's fees should not turn on the forum in which a claim is decided. *Morris v. Social Security Administration,* 689 F.2d 495, 497.

Motley's counsel correctly notes that Motley's only source of income, his social security payments, are not subject to attachment, garnishment or other collection proceedings. *Harris v. Bailey*, 574 F.Supp. 966 (W.D.Va.1983). Thus, it is only through the Secretary that Rogers can be made whole. It was the Secretary's own mistake which resulted in an over-payment to Motley, and it is not the attorney who should suffer the loss.

Magistrate Crigler's suggested resolution of this problem was to have the Secretary withhold 25 percent of Motley's current benefits until the full amount of the attorney's fee has been paid. The Secretary objects to this recommendation on the basis that § 406(b) only authorizes withholding out of past due benefits, and there is no authority for withholding any amount for attorney's fees out of current benefits.

The Secretary is partially correct. The necessary authority can be found not in § 406(b), but in 42 U.S.C. § 404, which provides for the recovery of over-payments. It is up to the Secretary to pay out the total fee award that should have been withheld by her, and then utilize the means uniquely at her disposal to recover any over-payment to Motley.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.